UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CHRISTOPHER BILLINGS,

    Plaintiff,

v.                              Civil Action no. 2:18-cv-00039

LOWE'S HOME CENTERS, LLC,

    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending are defendant Lowe's Home Centers, LLC's (Lowe's) motions for partial summary judgment as to punitive damages and future damages, each filed February 11, 2019.

### I. Background

On September 13, 2017, plaintiff Christopher Billings, a West Virginia resident and delivery driver for Wood Plus Hardwood Flooring, LLC, was working as a vendor in Lowe's Fayetteville, West Virginia location. Compl., ECF No. 1, at ¶¶ 1, 6, 8. Lowe's is a limited liability company which is principally located in North Carolina. Id. ¶ 3.

On that date, plaintiff arrived at Lowe's in Fayetteville, West Virginia to pick up merchandise that was to

be returned to Wood Plus. Pl.'s Dep., ECF No. 57-5, at p. 86. A Lowe's employee, Otis Underwood, offered to shift the load already in plaintiff's truck so that Wood Plus's merchandise could be loaded. Underwood Dep., ECF No. 57-3, at p. 131-32. Mr. Underwood checked out a Moffett forklift, which he then used to shift the load on plaintiff's truck. Id. at 131-33. While operating the forklift, Mr. Underwood ran over the plaintiff's foot. Id. at 133-34.

Mr. Underwood stated that plaintiff moved into the line of travel of the forklift before he had time to react and prevent the wheel from rolling onto the plaintiff's foot. Id. at 134. Mr. Underwood also claimed that plaintiff told him after the incident that plaintiff thought it was more his own fault than Mr. Underwood's. Id. While plaintiff disagreed with this particular portion of Mr. Underwood's testimony, he did note that they both should have been more careful. Pl.'s Dep., ECF No. 57-5, at 87. This opinion was seconded by plaintiff's expert, Nick Barta, who stated that he "wouldn't have done what either of those people did," referring to Mr. Underwood and plaintiff's actions that led to the plaintiff's foot being run over. Barta Dep., ECF No. 72-5, at p. 38.

After the incident, the plaintiff did not fill out an incident report with Lowe's, although Mr. Underwood and

plaintiff disagree as to whether Mr. Underwood offered the plaintiff that opportunity.  Pl.'s Dep., ECF No. 57-5, at p. 87; Underwood Dep., ECF No. 57-3, at p. 50.  Mr. Underwood never reported the incident to Lowe's.  Underwood Dep., ECF No. 57-3, at p. 50.  Resultant of his failure to report the incident, Mr. Underwood's employment was terminated after plaintiff filed a report with Lowe's over the telephone a week later, on September 20, 2017.  Pl.'s Dep., ECF No. 57-5, at p. 93-94; Underwood Dep., ECF No. 57-3, at p. 50.

At the time of the incident, Mr. Underwood had been an employee of Lowe's for over seven years and had worked in several different capacities.  Underwood Dep., ECF No. 57-3, at p. 13.  Mr. Underwood was at the time of the accident employed as a return to manufacturers ("RTM") clerk.  Id.  Over the course of his employment, Mr. Underwood had undergone extensive training on various power equipment including training on the Moffett in 2013, training on a counterbalance forklift in 2017 and powered equipment trainings in 2014 and 2017.  See Underwood's Learning History, ECF No. 57-8.  The Moffett forklift is a truck mounted forklift which differs from the counterbalance forklift in the sense that the Moffett has a reach mechanism, may be loaded onto a truck, and can be used on uneven terrain.  It also appears that there is no meaningful

distinction between how the Moffett and counterbalance forklifts are operated on a flat surface. See Barta Dep., ECF No. 57-12, at p. 19-20; 115-16 (noting that "the basic operating procedures of a forklift are pretty similar"); McNeeley Dep. 57-10, at p. 55.

Mr. Underwood noted that he was also tasked with training other employees on the use of several pieces of power equipment, including the Moffett. Underwood's Dep., ECF No. 57-3, at p. 39-40. Mr. Underwood's supervisor, however, stated that to the best of his knowledge, Mr. Underwood was not asked to train anyone on the Moffett, but rather "was the trainer for our in-house power equipment; again, the counter-balance forklift, the narrow-aisle reach truck and the order picker." McNeeley Dep., ECF No. 57-10, at 34.

It is undisputed that, on the date of the incident, Mr. Underwood was not certified to operate the Moffett. RTM clerks were not expected to ever operate the Moffett forklift, and therefore, Lowe's did not require RTM clerks to receive training or recertification on its operation. Wysong Dep., ECF No 57-11, at 55-56. Specifically, Mr. Underwood's supervisor stated that "based off of his job description, I would not expect him to be on the Moffett" and that to the best of his knowledge, he had never seen or heard of Mr. Underwood operating

4

the Moffett.  McNeeley Dep., ECF No. 57-10, at p. 34-35.  Van Wysong, Lowe's Rule 30(b)(6) representative, however, was "absolutely" sure that Mr. Underwood "understood all the safety features and how to operate that piece of equipment."  Wysong Dep., ECF No. 72-3, at p. 42.

Lowe's has a "Truck Loading and Unloading Safety Policy" which applies to all employees operating power equipment.  ECF No. 66-5, Ex. E, at 1.[1]  The policy states that power equipment operators must maintain a minimum distance of twenty feet from other people and ensure that truck drivers do not perform any truck preparation within twenty feet of an active unload area.  Id. at 2.  The equipment operator must also communicate these expectations to the truck driver.  Id.

While he was unable to recite the precise distance at which an equipment operator must remain from another person, Mr. Underwood did state his belief that Lowe's had a ten-foot policy.  Underwood Dep., ECF No. 72-6, at p. 81-83.  Mr.

---

[1] The plaintiff has moved to seal Lowe's policy document inasmuch as it is subject to the court's August 24, 2018 protective order. However, because this exhibit is evidence used to oppose Lowe's partial summary judgment motion, the First Amendment guarantee attaches to it.  In order for such document to remain sealed, "the denial [of access must be] necessitated by a compelling governmental interest."  See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606-07 (1982).  No such interest being asserted or perceived, it is ORDERED that plaintiff's motion to seal Lowe's policy be, and hereby is, denied.  It is further ORDERED that the policy be unsealed.

Underwood did admit, however, that he did not tell plaintiff to back away from the forklift while his truck was being loaded. Id. at p. 83-84.

Plaintiff initiated this action in this court on January 12, 2018 pursuant to the court's diversity jurisdiction. See 28 U.S.C. § 1332. In the plaintiff's complaint, he asserts a single cause of action for negligence. Plaintiff claims he is entitled to future damages that have become necessary as a result of his injury. Compl., ECF No. 1, at 3. He also asserts a claim for punitive damages by stating: "Defendant Lowe's actions, through its failure to properly train its employees, including the safety coordinator operating the forklift at Lowe's where this incident occurred, was done in a wanton, willful, and/or reckless fashion, warranting the award of punitive damages to the Plaintiff." Id. at ¶ 16.

On February 11, 2019, Lowe's filed its motion for partial summary judgment as to future damages. ECF No. 59. Lowe's contends in this motion that it is entitled to summary judgment because plaintiff has provided neither an expert opinion that states with "reasonable certainty" that plaintiff will require any future medical treatment, nor "an expert that can testify about future lost wages, future lost earning

capacity, or about any permanency related to his claimed injury."  Lowe's Mot., ECF No. 59, at 1-2.

In plaintiff's response in opposition to Lowe's motion for partial summary judgment, he argues that none of plaintiff's medical records suggest that his injury was not genuine, and that the only "outstanding issue had been for doctors to diagnose Plaintiff's chronic condition, which has not [sic, now] been done with the records and report of Dr. Schopf.  Dr. Schopf has opined that Plaintiff's [Complex Regional Pain Syndrome] CRPS is permanent and will impact him in the future."  Pl.'s Resp., ECF No. 69, at 7-8.  Plaintiff further notes that his expert witness, Dr. Davis, has prepared a supplemental report incorporating Dr. Schopf's medical diagnosis of injury and its impact on plaintiff's future activities.  Id. at 8.  The plaintiff sought, on February 25, 2019, to introduce the testimony and report of Dr. Robert Schopf after the expiration of the expert disclosure, discovery and dispositive motions deadlines.  ECF No. 71.

Also beyond the expert disclosure deadline, the plaintiff moved, on March 6, 2019, to disclose Mr. Dan Selby, an economics expert who would testify as to the amount of future damages based on Dr. Davis's supplemental report.  ECF No. 80, at 3-4.  By companion order this day entered, the court

precluded the use of Dr. Schopf's medical records or reports. Accordingly, the reports and testimony of Dr. Davis and Mr. Selby are limited to the end that future damages are excluded.

On February 11, 2019 Lowe's filed a separate motion for partial summary judgment as to plaintiff's claim for punitive damages. ECF No. 57. Lowe's contends that it is entitled to summary judgment inasmuch as the plaintiff has not met his burden of setting forth clear and convincing evidence that Lowe's acted with actual malice toward the plaintiff or with a conscious, reckless and outrageous indifference to the health, safety and welfare of others. <u>See</u> Lowe's Mem. Supp., ECF No. 58, at 11-12 (citing W. Va. Code § 55-7-29(a)).

In his response in opposition to Lowe's motion, the plaintiff asserts that there exists a genuine issue of material fact as to whether Lowe's failure "to have an employee properly trained/licensed to operate a forklift that injured a vendor was willful, wanton and reckless conduct on the part of Lowe's, particularly combined with Lowe's tasking Mr. Underwood with training other employees at their store." Pl.'s Resp., ECF No. 66, at 4.

## II.  Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in

favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

III. Discussion

A. Future Damages

In cases grounded in diversity jurisdiction, "federal courts are to apply the substantive law the State in which they are sitting would apply if the case had originated in a State court." Stonehocker v. Gen. Motors Corp., 587 F.2d 151, 154 (4th Cir. 1978).

The Supreme Court of Appeals of West Virginia has stated that "[t]he permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages." Syl. Pt. 1, Adkins v. Foster, 421 S.E.2d 271 (W. Va. 1992) (quoting Syl. Pt. 9, Jordan v. Bero, 210 S.E.2d 618 (W. Va. 1974)).

Here, the plaintiff states: "Dr. Schopf's report sets forth his opinion to a reasonable degree of medical certainty that Plaintiff's foot injury is permanent." Pl.'s Resp., ECF No. 69, at 10. Plaintiff also acknowledges in his response in opposition to the plaintiff's motion to strike the late disclosure of Dr. Schopf that he had "received no diagnosis of a permanent condition to a reasonable degree of medical certainty until Dr. Robert Schopf diagnosed him with Complex Regional Pain

Syndrome (CRPS) in February of 2019." ECF No. 82, at 1-2. Further, in his motion to disclose economics expert Dan Selby beyond the expert disclosure deadline, plaintiff admitted that as of November 21, 2018, he "had no medical basis to assert future economic damages because he lacked a medical diagnosis of a permanent medical condition proximately caused by the subject incident at Lowe's upon which Mr. Selby could base opinions," but that Dr. Schopf's opinion provides such evidence. ECF No. 80, at 2-3.

The court has excluded Dr. Schopf's medical records and report diagnosing the plaintiff with CRPS, and therefore the plaintiff cannot prove to a "reasonable certainty" the permanency or future effect of his injury. Accordingly, Lowe's is entitled to summary judgment as to plaintiff's claim for future damages.

B. Punitive Damages

The law in West Virginia governing the availability of punitive damages states:

> An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous

indifference to the health, safety and welfare of
others.

W. Va. Code § 55-7-29(a) (2015); see also Brown v. Gobble, 474 S.E.2d 489, 494 (W. Va. 1996) ("'[C]lear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established. It should be the highest possible standard of civil proof.") (citations omitted).

Although published before the enactment of West Virginia Code § 55-7-29(a), the West Virginia Supreme Court has previously provided guidance as to when punitive damages are available to a plaintiff. Under West Virginia law, punitive damages are not appropriate in cases of "simple negligence," Bennett v. 3 C Coal Co., 379 S.E.2d 388, 394 (W. Va. 1989), but are instead reserved for "actions of tort [ ] where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear," Alkire v. First Nat'l Bank of Parsons, 475 S.E.2d 122, 129 (W. Va. 1996). An award of punitive damages is reserved for "extreme and egregious bad conduct"—it "is the exception, not the rule," and "the level of bad conduct on the part of the defendant must be very high in order to meet the punitive standard." Perrine v. E.I. du Pont de Nemours & Co., 694 S.E.2d 815, 909-10 (W. Va. 2010).

Plaintiff argues that because Lowe's failed to properly train and/or license Mr. Underwood on the operation of the Moffett forklift, a jury could find that such failure was "willful, wanton and reckless" and award the plaintiff punitive damages.[2]  Specifically, the plaintiff argues that each of the following failures by Lowe's might be construed as "willful, wanton and reckless conduct": (1) Lowe's failure to train Mr. Underwood on the twenty-foot rule set forth in its policy; and (2) Lowe's failure to train Mr. Underwood on the Moffett forklift.  Pl.'s Resp., ECF No. 66, at 7-14.

In support of his argument, plaintiff cites two cases, neither of which is applicable to the matter here.  In Ball v. Baker, No. 5:10-cv-955, 2012 WL 4119127 (S.D.W. Va. Sept. 18, 2012), a deputy sheriff was hired despite there being a previous allegation of peeping against him, and after being hired, that same deputy sheriff went on to harass and have sexual relations with underage girls.  Id. at *1-2.  The court found that a jury might find the actions of the sheriff in conducting the background check of the deputy and failing to ensure that officers had access to training on professional standards to

---

[2] At no point in his response does the plaintiff refer to or acknowledge the standard set out in West Virginia Code § 55-7-29(a), even after being directed to it by Lowe's briefings.  Further, the plaintiff fails to show how any of the evidence he presents rises to the level of clear and convincing.

have been in "bad faith or in a wanton or reckless" manner. Id. at *13.

Next, plaintiff cites to <u>Wang v. Marziani</u>, 885 F. Supp. 74 (S.D.N.Y. 1995), where the court held that a reasonable jury could find that a plaintiff was entitled to punitive damages against a trucking company whose employee collided with another driver when the company failed to monitor the employee's conduct and encouraged him to "exceed federally-proscribed driving time limits." <u>Id.</u> at 79.

It is undisputed that Mr. Underwood violated Lowe's twenty-foot policy; had he not violated it, there would be no lawsuit. However, plaintiff's contention that "[h]ad Lowe's provided Moffett forklift training to Mr. Underwood as required by law, Mr. Underwood would have been trained that it is not acceptable to move a forklift when a person is within 20-feet of the forklift," is not persuasive. Pl.'s Resp., ECF No. 66, at 11.

Lowe's policy states that the twenty-foot rule applies to all "powered equipment," not just the Moffett. ECF No. 66-5, at 2. Mr. Underwood had received both power equipment and counterbalance forklift training in 2017. <u>See</u> Underwood's Learning History, ECF No. 57-8. Also, Mr. Underwood acknowledged that he was supposed to keep a certain distance

(ten feet) from others while operating equipment.  Underwood Dep., ECF No. 72-6, at p. 81-83.  Further, the plaintiff's expert offered no criticism of the content of Lowe's training on the twenty-foot rule, and stated that any training on the counterbalance forklift, which plaintiff had undergone in the same year the incident occurred, likely would have included training on the twenty-foot rule.  See Barta Dep., ECF No. 72-5, at p. 60-62; 106.

This situation varies meaningfully from those presented in Ball and Wang inasmuch as there is no evidence, let alone clear and convincing evidence, to establish that Lowe's failed to train Mr. Underwood on the twenty-foot rule or that Lowe's failed to monitor Mr. Underwood or encouraged Mr. Underwood to violate Lowe's policies.  A single failure to comply with Lowe's twenty-foot policy on the part of Mr. Underwood does not indicate that Lowe's acted with a "conscious, reckless and outrageous indifference to the health, safety and welfare of others."

Next, plaintiff argues that Lowe's failure to train Mr. Underwood on the Moffett might be considered by a jury to be willful, wanton and reckless.³  Lowe's, however, is not said to

---

³ The court notes that the plaintiff makes much of the fact that Mr. Underwood stated in his deposition and in an electronic letter to Lowe's that he was told that he was fired, in part,

have encouraged an untrained employee to operate the Moffett.
Mr. Underwood worked as an RTM clerk. Lowe's representatives
consistently stated that RTM clerks are not prompted to have
Moffett training by Lowe's training programs, because operation
of the Moffett is not in the RTM clerk job description.
McNeeley Dep. ECF No. 57-10, at p. 33-34; Wysong Dep., ECF No.
72-3, at p. 42. Lowe's is not shown to have had any expectation
that Mr. Underwood, as an RTM clerk, would use a Moffett
forklift. McNeeley Dep.; ECF No. 57-10 at p. 33-35, 49-51.

Accordingly, the plaintiff has not set forth clear and
convincing evidence that Lowe's acted "with actual malice toward
the plaintiff or a conscious, reckless and outrageous
indifference to the health, safety and welfare of others."

Inasmuch as the plaintiff has not provided sufficient
evidence to establish a genuine issue of material fact as to his
claim for punitive damages, Lowe's is entitled to summary
judgment.

---

for operating the Moffett without certification. See Underwood
Dep., ECF No. 66-3, at p. 46; Underwood Letter, ECF No. 66-2.
The plaintiff suggests that Mr. Underwood being fired for this
reason somehow indicates bad conduct on the part of Lowe's.
Pl.'s Resp., ECF No. 66, at 12. Lowe's states that Mr.
Underwood was only fired because he failed to file a report of
the accident. See, e.g., Osborn Aff., ECF No. 72-4. However it
may have been, none of it rises to the level of egregious
conduct.

## IV. Conclusion

Accordingly, it is ORDERED as follows:

1. That defendant's motion for partial summary judgment as to plaintiff's claim for future damages be, and hereby is, granted;

2. That defendant's motion for partial summary judgment as to plaintiff's claim for punitive damages be, and hereby is, granted; and

3. That plaintiff's February 20, 2019 motion to seal Exhibit E attached to its response in opposition to Lowe's motion for summary judgment as to punitive damages be, and hereby is, denied.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record.

ENTER: April 24, 2019

_____
John T. Copenhaver, Jr.
Senior United States District Judge